IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Justice Everywhere Productions, LLC<br><br>        Plaintiff,<br><br>v.<br><br>DOES 1-11,<br><br>        Defendants, | Case No.:<br><br><br><br>Judge |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff Justice Everywhere Productions, LLC. ("JE"), complains and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action for copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). Plaintiff seeks injunctive relief, statutory damages, attorney fees and costs, and such other relief as the Court deems proper.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as each defendant is believed to reside in this district.

**PARTIES**

PLAINTIFF

4. Plaintiff JE is a Georgia Limited Liability Company corporation with principal offices in Los Angeles, California and an affiliate of Hannibal Classics, a production company and distributor of a notable catalog of major motion pictures.

The Rights of Justice Everywhere Productions, LLC

5.      *Vengeance: A Love Story* is a motion picture released internationally, and with an upcoming 2017 domestic release.

6.      *Vengeance: A Love Story* is protected by the Copyright Act and registrations including Pending Ser. Req. # 1-4488527401, dated March 1, 2017.  Exhibit 1.

7.      Under The Copyright Act, JE is the proprietor of copyrights and related interests needed to bring suit.

8.      The motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

9.      The motion picture is currently offered for sale in commerce being a major motion picture released in theatres.

10.     Each Defendant had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and copies, each of which bore a proper copyright notice.

11.     JE comes to court seeking relief as the motion picture *Vengeance: A Love Story*, while still in theatres, was pirated and trafficked in the BitTorrent network and is being illegally downloaded and distributed countless times worldwide with many confirmed instances of infringing activity traced to Ohio.

THE DEFENDANTS

12.     The defendants identified herein are currently known only by their Internet Protocol ("IP") address that was observed by plaintiff's investigator, Maverickeye, as distributing plaintiff's motion picture.

13. Plaintiff has identified each defendant by the IP address assigned to that Defendant by his or her Internet Service Provider ("ISP") and the date and the time at which the infringing activity of each Defendant was observed. Exhibit 2.

14. Through geolocation, the IP address used by each defendant has been traced to the State of Ohio and this judicial district.

15. Each defendant has been observed and confirmed as distributing Plaintiff's motion picture and other copyrighted content persistently and consistently for months.

16. Each defendant has been knowingly and regularly distributing the illegal copy of *Vengeance: A Love Story,* and is aware that they were acting without right and with the specific intent of causing harm to plaintiff.

17. Each defendant has also been observed as associated with the peer-to-peer exchange of over 100 other copyrighted titles through the BitTorrent network. As such each defendant's conduct is clearly willful and persistent.

18. The volume of activity and titles associated with each defendant's IP address indicates that each defendant is likely the primary subscriber or someone who resides with the subscriber as such activity indicates each defendant is an authorized user of the IP address with consistent and permissive access.

19. The volume of activity and titles associated with each defendant's IP address indicates that each defendant is not a young child.

20. The records maintained by the ISP should be able to identify either each defendant, or the subscriber who contracted with the ISP for service who in turn is likely to have knowledge that will lead to the identity of each defendant.

21. Plaintiff intends to seek discovery, including issuing a subpoena for records from the ISPs to ascertain the true identity of each defendant and further discovery as may be needed.

## BACKGROUND

PEER-TO-PEER INTERNET PIRACY

*Operation*

22. BitTorrent, also known as peer-to-peer file sharing, has become one of the most common systems for users to illegally dispense huge amounts of data, including motion pictures, in digital format.

23. The acquisition, copying and transfer of the Motion Picture is accomplished using a network called a "BitTorrent protocol" or "torrent," which is different than the standard Peer- to-Peer ("P2P") protocol. The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a seed. Other users ("peers") and the network, through a series of steps, connect to the seed file to download a movie. As additional peers request the same file, each additional user becomes a part of the network from which the file can be downloaded.  Each new file downloader receives a different piece of the data from each user who has already downloaded the file that together comprises the whole. This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm." The effect of this technology makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network intentionally also becomes a source of download for that infringing file.

24. This distributed and cooperative nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the speed of transfer and likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically

a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file. Essentially, because of the nature of the swarm downloads as described above, every infringer is stealing copyrighted material from many Internet Service Providers ("ISPs") in numerous jurisdictions.

25. The BitTorrent protocol enables computers to exchange large files (such as motion pictures) without creating a heavy workload for any individual source/computer. It allows users to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion pictures) available for copying by other users; (2) search for files stored on other computers; and (3) transfer exact copies of files from one computer to another over the Internet.

26. The use of BitTorrent requires multiple intentional acts. A user must load specific software, use the software to join the network, search for a file, and then select the file they wish to download. As each user or peer joins the network and requests a copy of a file, they form a type of social contract to not only download the file, but to be a part of the network to allow the file to be downloaded by others. Each new peer requesting the file receives pieces of the data from each peer who already has downloaded the file, and then in turn makes that content available to others.

27. Since the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download because this will maximize his or her download speed and access to content.

28. Each defendant in this action has been observed persistently making plaintiff's motion picture available to others in furtherance of the BitTorrent network.

*The Business of Piracy*

29. Internet piracy and in particular BitTorrent piracy, though known as peer-to-peer file sharing is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

30. To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

31. Each defendant's participation in the BitTorrent exchange of plaintiff's motion picture is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

32. Many parties, and possibly each defendant have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie, even if only through being granted greater access to other pirated content.

33. The use of BitTorrent does more than cause harm through the simple theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

34. Based on activity observed associated with each defendant's IP address, each defendant is proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy.

*Harm to Plaintiff and Others*

35. Digital piracy, including BitTorrent piracy costs the entertainment industry over $80 billion per year.

36. As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

37. The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture. Piracy undermines the economy, job base, and tax base on which our citizens rely and promotes a general disregard for the respect of rights of others.

38. As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the United States of America.

## CAUSE OF ACTION

(Federal Copyright Infringement)

39. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

40. Each defendant, without the permission or consent of Plaintiff, copied and distributed Plaintiff's motion picture through a public bittorrent network.

41. Each defendant's actions infringed Plaintiff's exclusive rights under The Copyright Act.

42. The conduct of each defendant has been with notice, willful, intentional, in disregard of and indifferent to Plaintiff's rights with the intent to cause Plaintiff harm.

43. As a direct and proximate result of the Defendants' conduct, Plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

44. Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

45. The conduct of the Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.

46. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each defendant from further contributing to the infringement of Plaintiff's copyrights, the economy of piracy, and ordering that Defendant destroy all copies of the motion picture made in violation of Plaintiff's rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each defendant as follows:

   A. For a finding that each defendant willfully infringed Plaintiff's rights;

   B. For entry of permanent injunction enjoining each defendant from direct, indirect or contributory infringement of Plaintiff's rights, except pursuant to a lawful license or with the express authority of Plaintiff. And further directing defendant to destroy all unauthorized copies of Plaintiff's motion picture;

   C. For entry of permanent injunction enjoining defendant from supporting the BitTorrent economy of piracy by enjoining Defendant from direct, indirect or contributory infringing file sharing in violation of U.S. copyright law;

   D. Statutory damages pursuant to 17 U.S.C. § 504;

   E. For Plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

   F. For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: June 28, 2017.

          Respectfully Submitted,

*/s/ Timothy A. Shimko*

Timothy A. Shimko (0006736)
Shimko Law Offices LLC
159 Crocker Park Blvd. # 400
Westlake, Ohio 44145
Tel. (216) 241-8300
Fax (216) 539-2015
tas@shimkolaw.com